UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| THE CLEVER FACTORY, INC., a Tennessee corporation, | )<br>)<br>) |
| Plaintiff, | ) CIVIL NO._____<br>) DEMAND FOR JURY TRIAL |
| -v- | )<br>)<br>)<br>)<br>) |
| KINGSBRIDGE INTERNATIONAL, INC., a California corporation, and Does 1-20, | )<br>)<br>)<br>) |
| Defendants. | ) |

## COMPLAINT

Plaintiff The Clever Factory, Inc. (hereinafter "Plaintiff" or "Clever Factory"), by and through its undersigned attorneys allege as follows:

## PARTIES

1. Plaintiff is a corporation duly organized under the laws of Tennessee having its principal place of business located at 545 Mainstream Drive, Suite 101, Nashville, TN 37228.

2. Upon information and belief, defendant Kingsbridge International, Inc. (hereinafter "Kingsbridge") is a corporation organized and existing under the laws of Nevada registered to do business in California having its principal offices located at 2950 Madera Road, Simi Valley, CA 93065.

3. Does 1-20 are individuals and business entities whose complete identities are presently unknown to plaintiff, and, upon information and belief, were and continue to be

1

8249763

Case 3:11-cv-01187   Document 1   Filed 12/16/11   Page 1 of 14 PageID #: 1

involved with claims described in this Complaint. When the identities of these parties become known to plaintiff, those defendants and the acts they engaged in will be described in an amended complaint.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action on the following bases:

(a) Under 28 U.S.C. § 1331, since this action involves questions arising under 17 U.S.C. § 501, 17 U.S.C. § 502, 17 U.S.C. § 503, 17 U.S.C. § 504 and 17 U.S.C. § 505;

(b) Under 28 U.S.C. § 1331, since this action involves questions arising under 15 U.S.C. §1116, 15 U.S.C. §1117, and 15 U.S.C. §1125(a);

(c) Under 28 U.S.C. § 1332, since this action being between citizens of different states where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs; and

(d) Under the doctrine of supplemental jurisdiction 28 U.S.C. § 1367, since this action alleges state law violations that are part of the same case or controversy involved with respect to the other claims in this action over which this Court has original jurisdiction.

5. Venue is proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) and (c), since a substantial part of the events giving rise to Plaintiff's claims occurred in the Middle District of Tennessee and Defendant does business in or otherwise avails itself of the benefits of this jurisdiction, including, Defendant contracting in the Middle District of Tennessee with Dollar General Corporation ("Dollar General") to sell Dollar General the Knock-off Game Cards.

6. The Middle District of Tennessee, Nashville Division, has personal jurisdiction over Defendant.

2

8249763

Case 3:11-cv-01187   Document 1   Filed 12/16/11   Page 2 of 14 PageID #: 2

## NATURE OF THE ACTION

7. This action arises under (i) 17 U.S.C. § 501, copyright infringement, (ii) under the Lanham Act, 15 U.S.C. §1125(a), false designation of origin, false descriptions, dilution, and unfair competition, and (iii) under Tennessee and the Common Law for substantial and related claims.

## FACTS

8. Clever Factory is the owner of the unique designs and illustrations used in connection with adaptations of the game cards "Crazy Eights" (see Exhibit A), "Old Maid" (see Exhibit B), "Go Fish" (see Exhibit C), and "Matching" (see Exhibit D) (collectively referred to as the "Works") created under a work for hire arrangement. The author assigned all ownership rights and interests in and to the Works and corresponding copyrights to Plaintiff in or about January 2004 for the titles "Crazy Eights" and "Old Maid" and, in or about March 2006, for the titles "Matching" and "Go Fish".

9. Clever Factory is the owner of the original instructions on how to play adaptations of the game cards "Old Maid" (see Exhibit E) and "Crazy Eights" (see Exhibit F) (jointly referred to as the "Instructions"), created under a work for hire arrangement. The author assigned all ownership rights and interests in and to the Instructions and corresponding copyrights to Plaintiff in or about January 2004.

10. Plaintiff used the Works and Instructions to create original adaptations of the game cards "Crazy Eights", "Old Maid", "Go Fish", and "Matching" (collectively referred to as the "Game Cards").

11. Over the past approximately six (6) years, the Game Cards have been manufactured, promoted and sold throughout the United States. To date, approximately five

million individual card packs of the Game Cards have been sold at the retail level. The following copyright registrations (the "Copyrights") evidence the ownership and original creation of the Works and the instructions:

| Copyright Registration Number | Date of Registration | Title of Work |
|---|---|---|
| VA 1-409-168 | April 25, 2007 | Matching |
| VA 1-409-212 | April 25, 2007 | Old Maid |
| VA 1-409-169 | April 25, 2007 | Crazy Eights |
| VA 1-711-547 | July 18, 2008 | Go Fish |
| TX 6-568-476 | April 25, 2007 | Old Maid Instructions |
| TXu 1-355-067 | April 25, 2007 | Crazy Eights Instructions |

12. The Copyrights are in full force and effect and are owned exclusively by Plaintiff.

13. In addition to the overall look and feel of each of the Game Cards, the Copyrights are comprised of unique design elements that are merely aesthetic (the "Design Elements"). Plaintiff's exclusive ownership rights in the Copyrights comprise all the Design Elements in Works and the text in the Instructions.

14. Defendant copied the Works, including the Design Elements, and the Instructions and, upon information and belief, manufactured and sold Game Cards (the "Knock-off Game Cards") that include or otherwise use instructions substantially similar to or otherwise the same as the Instructions, and images that are substantially similar to or otherwise the same as the Works [see Knock-off Game Cards "Old Maid" (see Exhibit G), "Crazy Eights" (see Exhibit H), "Matching" (see Exhibit I), "Go Fish" (see Exhibit J), "Old Maid Instructions" (see Exhibit K), and "Crazy Eights Instructions" (see Exhibit L)].

15. Except for "Go Fish", Defendant copied the packaging, including all of the design elements therein and, as such, is using substantially similar packaging in connection with the Knock-off Game Cards.

4

16. The trade dress in the Game Cards acquired distinctiveness through secondary meaning such that consumers are likely to associate the source of such products with Plaintiff. The trade dress in the Game Cards encompasses the unique packaging, which incorporate original images, lettering, and layouts. These characteristics are non-functional, have acquired secondary meaning, and Defendant's use of such features in connection with the Knock-off Game Cards is likely to cause confusion in the marketplace as to the source of such goods.

17. Due to the exclusive and widespread use by Plaintiff of the non-functional design features used in connection with the packaging of the Game Cards, the trade dress in such products has acquired enormous value and recognition in the United States. Such trade dress is well known to the consuming public and the trade as identifying and distinguishing Plaintiff as the exclusive and unique source of the products that are used in connection with such trade dress.

18. Defendant, upon information and belief, willfully, with bad faith intent to profit, and without the consent of Plaintiff, trafficked in and continue to traffic in, used and continue to use, in this judicial district and elsewhere, trade dress that is misleading, confusingly similar, and likely to cause confusion with the trade dress used in connection with the Game Cards.

19. On or about December 31, 2008, an action was commenced by Plaintiff against Defendant in this judicial district, Case 3:08-cv-01056 (the "First Action"), claiming, *inter alia*, that Defendant infringed the Copyrights and Plaintiff's trade dress in the Game Cards.

20. On November 17, 2008, pursuant to Rule 68 of the Federal Rules of Civil Procedure, Defendant and co-defendant, Rite Aid Corporation, admitting that they infringed the Copyrights, *inter alia*, allowed judgment to be entered against them for $36,000 in complete satisfaction of all claims commenced in the First Action.

21. To induce Plaintiff to settle and accept the offer of judgment in the First Action, Defendant represented to Plaintiff that Rite Aid was the sole purchaser of the Knock-Off Game Cards, *inter alia,* which were bought for its "Christmas 2007 Dollar Days Program". Defendant further represented to Plaintiff that the Knock-Off Game Cards, *inter alia,* were in Rite Aid's stores November and December of 2007. After receiving a cease and desist letter from Plaintiff's counsel on or about December 13, 2007, Rite Aid represented to Plaintiff that it recalled on or about December 30, 2007 all of its remaining inventory of the Knock-Off Game Cards, *inter alia.* Defendant represented that it sold Rite Aid a total of 48,108 units (12pcs per store for 4,009 stores) of infringement products that included the Knock-Off Game Cards. Prior to the recall, Defendant represented to Plaintiff that Rite Aid had sold 41,714 units of the infringement products leaving unaccounted for approximately 2,656 units in Rite Aid's pipeline.

22. Until in or about September 2011, Plaintiff was not aware of any additional infringements of its Copyrights by Defendant. In or about September 2011, however, Plaintiff discovered that Defendant had embarked on a new round of manufacturing, selling and distributing the Knock-Off Game Cards, in this case to Dollar General Corporation. Upon information and belief, Defendant purchased over 260,000 sets of the Knock-Off Game Cards of which approximately 230,000 were sold.

23. On or about September 21, 2011, Defendant was sent a letter setting forth in sufficient detail the nature of the present infringements. Such letter demanded, *inter alia*, that Defendant immediately cease its wrongful activities, remove all of the Knock-Off Game Cards from any display, and provide detailed information concerning the recent infringements. As of September 21, 2011, the Knock-Off Game Cards were sold using a unique universal product-code ("UPC Code") and marketed in a *back-to-school* sales display.

24. Nonetheless, despite having received the September 21, 2011 letter from Plaintiff demanding, *inter alia*, that Defendant immediately cease its wrongful activities and remove all of the Knock-Off Game Cards from any display, on November 3, 2011, the Knock-Off Game Cards were again discovered being sold by Dollar General at its Pleasant View, Tennessee store this time under another UPC Code and marketed in a *Christmas* sales display.

25. As a result of Defendant manufacturing, having manufactured, promoting and selling the Knock-off Game Cards, Plaintiff lost sales and continues to lose sales of its products and has been forced to create new packaging and artwork for the Game Cards.

## COUNT I- COPYRIGHT INFRINGEMENT (17 U.S.C. § 501)

26. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 25 above as if fully set forth herein.

27. Defendant's sale of the Knock-off Game Cards, which use the Works and the Instructions, constitutes copyright infringement pursuant to 17 U.S.C. § 501.

28. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to plaintiffs, for which plaintiffs have no adequate remedy at law.

29. Such conduct on the part of Defendant has caused and will continue to cause monetary damages to Plaintiff in an amount to be determined.

## COUNT II - FALSE DESIGNATION OF ORIGIN AND UNFAIR COMPETITION (15 U.S.C. § 1125(a))

30. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 29 hereof as if fully set forth herein.

31. The Defendant's use of Plaintiff's trade dress constitutes the use of false or misleading designations of origin and/or false representations of fact in violation of 15 U.S.C. § 1125(a), in that such conduct is likely to cause consumers to be confused, mistaken or deceived into believing that the offending products originate with, or are sponsored by Plaintiff, and/or Defendant is an authorized licensee, distributor or retailer of Plaintiff.

32. Such conduct on the part of the Defendant has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

33. Such conduct on the part of Defendant has caused and will continue to cause monetary damages to Plaintiff in an amount to be determined.

### COUNT III - COMMON LAW
### TRADE DRESS INFRINGEMENT

34. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 33 hereof as if fully set forth herein.

35. By reason of the foregoing, Defendant has engaged, and is continuing to engage, in acts of trade dress infringement in violation of the common law.

36. Such conduct on the part of the Defendant has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

37. Such conduct on the part of Defendant has caused and will continue to cause monetary damages to Plaintiff in an amount to be determined.

### COUNT IV - COMMON LAW
### UNFAIR COMPETITION

38. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 37 hereof as if fully set forth herein.

39. By reason of the foregoing, the Defendant has engaged, and is continuing to engage, in acts of unfair competition in violation of the common law.

40. Such conduct on the part of Defendant has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

41. Such conduct on the part of Defendant has caused and will continue to cause monetary damages to Plaintiff in an amount to be determined.

### COUNT V - UNFAIR COMPETITION
### (TENNESSEE STATE LAW)

42. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 41 hereof as if fully set forth herein.

43. Defendant engaged in conduct that "passed off" the Knock-off Game Cards as that of the Game Cards, and engaged and continues to engage in such conduct.

44. In engaging in such conduct, Defendant, upon information and belief, acted with intent to deceive the public as to source of the Knock-off Game Cards or Defendant had authority to sell such Game Cards.

45. The public was actually confused or deceived as to source of the Knock-off Game Cards or Defendant's authority to sell such game cards.

46. Such conduct on the part of the Defendant has caused and will continue to cause irreparable injury to Plaintiff, for which Plaintiff has no adequate remedy at law.

47. Such conduct on the part of Defendant has caused and will continue to cause monetary damages to Plaintiff in an amount to be determined.

## COUNT VI - VIOLATION OF TENNESSEE
## ANTI-DILUTION STATUTE

48. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 47 hereof as if fully set forth herein.

49. Defendant's use of the Plaintiff's trade dress in the Game Cards is likely to dilute the quality and/or strength of Plaintiff's trade dress in the Game Cards in violation of the anti-dilution laws of the state of Tennessee, Tenn. Code Ann. § 47-25-512.

## COUNT VII - VIOLATION OF TENNESSEE
## CONSUMER PROTECTION ACT

50. Plaintiff repeats and re-alleges each and every allegation set forth in paragraphs 1 through 49 hereof as if fully set forth herein.

51. Defendant's use of Plaintiff's trade dress in the Game Cards is an unfair and deceptive trade practice prohibited by the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104, including but not limited to the following:

(a) Defendant's use of Plaintiff's trade dress in the Game Cards is likely to lead to substantial consumer confusion or misunderstanding as to the source, sponsorship, approval or certification of goods offered by Defendant in violation of Tenn. Code Ann. § 47-18-104(b)(2);

(b) Defendant's use of Plaintiff's trade dress in the Game Cards is a false passing off of goods as those of another in violation of Tenn. Code Ann. § 47-18-104(b)(1);

(c) Defendant's use of Plaintiff's trade dress in the Game Cards is an advertisement of goods with no intent to sell them as advertised in violation of Tenn. Code. Ann. § 47-18-104(b)(9); and

(d) Defendant's use of Plaintiff's trade dress in the Game Cards is an act or practice that is deceptive to the consumer and others in violation of Tenn. Code. Ann. § 47-18-104(b).

52. Defendant's conduct is causing, and is likely to cause, substantial injury to the public and to Plaintiff, and Plaintiff is entitled to injunctive relief and to recover Plaintiff's actual damages or an award of Defendant's profits, Plaintiff's costs, and Plaintiff's reasonable attorney fees under Tenn. Code Ann. § 47-18-109. Any such damages or profits awarded should be trebled pursuant to Tenn. Code Ann. § 47-18-109.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment:

1. Permanently enjoining and restraining Defendant, its officers, directors, principals, servants, employees, customers, successors and assigns, and all those in active concert or participation with them, from:

(a) imitating, copying, counterfeiting, or making unauthorized use of the Works and the Instructions;

(b) using, registering, attempting to register, or aiding and abetting others to use, register, or attempt to register any work that is a simulation, reproduction, copy, or colorable imitation of the Works and the Instructions;

(c) engaging in any other activity, including the effectuation of assignments or transfers of their interests in simulations, reproductions, copies, counterfeits or colorable imitations of the Works and the Instructions, as well as the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose

11

of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsection 1(a) and 1(b) above;

   (d) imitating, copying or making unauthorized use of Plaintiff's trade dress in its products, the Works and/or the Instructions;

   (e) using, registering, attempting to register, or aiding and abetting others to use, register, or attempt to register any trade dress that is a simulation, reproduction, copy, or colorable imitation of Plaintiff's trade dress;

   (f) using, registering, attempting to register, or aiding and abetting others to use, register, or attempt to register any trade dress that is a simulation, reproduction, copy, or colorable imitation of any aspect of the trade dress in its products;

   (g) using, registering, attempting to register, or aiding and abetting others to use, register, or attempt to register any trade dress that tends to relate or connect such trade dress in any way to Plaintiff, or to any products sponsored, approved by, or connected with Plaintiff;

   (h) using, registering, attempting to register, or aiding and abetting others to use, register, or attempt to register any trade dress which serves to dilute, or tends to dilute, Plaintiff's image, its products, reputation, or the distinctive quality of any of Plaintiff's trade dress;

   (i) making any statement or representation whatsoever, with respect to Plaintiff's trade dress or Works, that falsely designates the origin of products or is false or misleading in any way;

   (j) engaging in any other activity constituting unfair competition with regard to the Plaintiff, and/or the Game Cards, or constituting an infringement of Plaintiff's trade dress, the Copyrights, or of Plaintiff's rights in, or its right to use or exploit, its trade dress, or the

Copyrights, or constituting any dilution of Plaintiff's trade dress in the Game Cards, and the reputation and the goodwill associated with Plaintiff's trade dress in the Game Cards; and

(k) engaging in any other activity, including the effectuation of assignments or transfers of simulations, reproductions, copies, counterfeits or colorable imitations of the Copyrights, and/or Plaintiff's trade dress, including the formation of other corporations, partnerships, associations or other entities or the utilization of any other devices, for the purpose of circumventing, evading, avoiding or otherwise violating the prohibitions set forth in subsection 1(a) through 1(j) above.

2. Directing such other relief as the Court may deem appropriate to prevent the unauthorized use of the Works and/or the Instructions.

3. Directing that Defendant deliver for destruction all products, labels, prints, signs, packages, dies, wrappers, receptacles and advertisements in their possession, custody or control bearing Plaintiff's trade dress in its products using the Works, including all patterns, plates, molds, matrices and other means of making such simulations of Plaintiff's trade dress in its products using the Works.

4. Directing such other relief as the Court may deem appropriate to prevent the trade and public from deriving any erroneous impression that any product offered for sale, sold or otherwise circulated or promoted by Defendant is authorized by Plaintiff, or related to or associated in any way with the Game Cards.

5. Requiring Defendant to account and pay over to Plaintiff all profits realized by its infringement of the Copyrights, and that these illicit profits be trebled since they were generated willfully by Defendant or, in the alternative, at Plaintiff's election, pay over to Plaintiff

13

maximum statutory damages which shall be trebled since Defendant's wrongful actions were willful.

6. Awarding Plaintiff damages representing three times the amount of Plaintiff's actual damages incurred by reason of the facts and occurrences alleged herein or, in the alternative at Plaintiff's election, punitive damages to the extent allowed.

7. Awarding Plaintiff consequential damages to be determined.

8. Awarding Plaintiff its costs and reasonable attorneys', expert witness, and investigating fees, together with pre-judgment interest.

9. Awarding Plaintiff such other and further relief as the Court may deem just and proper.

## JURY DEMAND

Plaintiff demands that all claims so triable be tried by a jury.

      s/Heather J. Hubbard
      Robb S. Harvey, Esq. BPR No. 011519
      Heather J. Hubbard, Esq. BPR No. 23699
      WALLER LANSDEN DORTCH & DAVIS, LLP
      511 Union Street, Suite 2700
      Nashville, Tennessee 37219
      Tel. (615) 244-6380
      E-Mail: robb,harvey@wallerlaw,com
      heather.hubbard@wallerlaw,com

*Local Counsel for Plaintiff*

Tedd S. Levine, Esq. (*pro hac vice pending*)
LAW OFFICES OF TEDD S. LEVINE, LLC
1010 Franklin Avenue, 2nd Floor
Garden City, NY 11530
Tel. (516) 294-6852
E-Mail: lawofficesofteddslevine@gmail.com

*Lead Counsel for Plaintiff*