IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE CLEVER FACTORY, INC.       )
                               )
      v.                       )     NO. 3:11-1187
                               )
KINGSBRIDGE INTERNATIONAL, INC., et al.  )

**M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and all proceedings in the action, including the entry of a final judgment. See Order entered February 22, 2012 (Docket Entry No. 24). The action is currently set for a jury trial on June 17, 2014. See Order entered April 22, 2013 (Docket Entry No. 89).

Presently pending before the Court is the motion for summary judgment filed by Defendant Kingsbridge International, Inc. (Docket Entry No. 53). The Plaintiff has responded to the Defendant's motion by filing a joint response in opposition and cross motion for partial summary judgment on the issue of liability as to its copyright infringement claim. (Docket Entry No. 60). For the reasons set out below, the Defendant's motion for summary judgment is denied in part and granted in part.

**I. BACKGROUND**

The Clever Factory, Inc. ("Clever Factory") is a Tennessee corporation having its principal place of business in Nashville, Tennessee. Clever Factory has all ownership interests in and holds

copyright registrations for visual artworks that are used in adaptations of eight different game cards known as "Crazy Eights," "Old Maid," "Go Fish," "Matching," "Bible Heroes," "Bible Trivia," "Build-a-Word," and "Puzzle Cards" ("the Works"). It also has all ownership interests in and holds copyright registrations for literary works that comprise original instructions on how to play the adaptions of the game cards for "Old Maid," "Crazy Eights," and "Build-a-Word" ("the Instructions"). Clever Factory uses the Works and Instructions to create original adaptations of flash card games ("Flash Card Games") that it manufactures, promotes, and sells throughout the United States. Clever Factory also holds a trademark registration for the phrase "Good Grades," which it uses in connection with its products.

On October 31, 2008, Clever Factory filed an action in the Middle District of Tennessee ("the First Lawsuit") against Rite Aid Corporation ("Rite Aid"), Kingsbridge International, Inc. ("Kingsbridge"), Jiande Bedding Articles Limited ("Jiande"), and twenty "John Doe" defendants alleging claims for copyright infringement in violation of 17 U.S.C. § 501 (the "Copyright Act"), claims for violations of 15 U.S.C. § 1125(a) of the Lanham Act (the "Lanham Act"), and various claims under Tennessee law. See The Clever Factory, Inc. v. Rite Aid Corporation, et al., 3:08-1056. Clever Factory alleged that Jiande, a Chinese corporation, manufactured flash card games that were substantially similar to or otherwise the same as Clever Factory's Flash Card Games and that copied the copyrighted Works and Instructions, as well as the unique design elements ("Design Elements") and the trade dress associated with Clever Factory's Flash Cards Games. Clever Factory alleges that approximately 48,000 units of the flash card games manufactured by Jiande ("the Knock-off Flash Card Games") were purchased and distributed by Kingsbridge to Rite Aid for sale to consumers in the United States during 2007 without the authorization of Clever Factory and in a manner that

violated Clever Factory's legal rights.  Shortly after the First Lawsuit was filed, Rite Aid and Kingsbridge made an offer of judgment for $36,000.00 that was accepted by Clever Factory, and final judgment was entered against Rite Aid and Kingsbridge by Order entered November 24, 2008. See Docket Entry No. 8 in First Lawsuit.[1]

On December 16, 2011, Clever Factory filed the instant lawsuit against Kingsbridge and twenty "John Doe" defendants alleging that, during 2011, Kingbridge had sold or distributed for sale 260,000 sets of Knock-off Flash Card Games of the "Crazy Eights," "Old Maid," "Go Fish," and "Matching" flash card games causing injury to Clever Factory and in violation of Clever Factory's legal rights.  Clever Factory asserts seven counts: 1) copyright infringement in violation of 17 U.S.C. § 501; 2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a); 3) trade dress infringement in violation of common law; 4) unfair competition in violation of common law; 5) unfair competition in violation of Tennessee state law; 6) violation of Tenn. Code. Ann. § 47-25-513, the Tennessee anti-dilution statute; and 7) violation of Tenn. Code Ann. § 47-18-104, the Tennessee Consumer Protection Act ("TCPA").  See Complaint (Docket Entry No. 1).  Clever Factory seeks injunctive relief and damages, including treble and punitive damages.

In a first amended complaint filed March 25, 2013 (Docket Entry No. 82), Clever Factory expounded on its allegations and added 13 businesses as defendants to the action based on allegations that Kingsbridge had sold and shipped Knock-off Flash Card Games of the "Crazy Eights," "Old Maid," "Go Fish," and "Matching" Flash Card Games to the 13 businesses, which in

---

[1] Clever Factory did not pursue its claims against Jiande or the John Doe defendants and, on December 3, 2008, filed a notice of voluntary dismissal as to these defendants.  See Orders entered December 3, 2008 (Docket Entry Nos. 10 and 12) in First Lawsuit.

turn sold the Knock-off Flash Card Games to consumers in the United States.[2] Judgments have been entered against each of the 13 newly added defendants, except for Rite Aid, after Clever Factory accepted offers of judgment from those defendants. See Docket Entry Nos. 114 and 118.

## II. DEFENDANT KINGSBRIDGE'S MOTION FOR SUMMARY JUDGMENT

In its motion for summary judgment, Kingsbridge asserts that the pre-litigation cease-and-desist letter sent to Kingsbridge on December 13, 2007, other pre-litigation correspondence between Clever Factory and Kingsbridge during 2007 and 2008, and the First Lawsuit all focused on alleged infringement of Clever Factory's legal rights in the "Bible Heroes," "Bible Trivia," "Build-a-Word," and "Puzzle Cards" Flash Card Games and not upon infringements of the "Crazy Eights," "Old Maid," "Go Fish," and "Matching" Flash Card Games. Kingsbridge contends that the first notice from Clever Factory that it considered Kingsbridge's sale and distribution of Old Maid, Crazy Eights, Matching and Go Fish cards and their packaging and instructions to be infringements of Clever Factory's legal rights was a cease-and-desist letter sent to Kingsbridge on September 21, 2011.

Kingsbridge argues that Clever Factory's failure to protect its legal rights related to the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games prior to September 21, 2011, indicated to Kingsbridge that its continued sale of the Knock Off Flash Card Games in their existing packaging and with the existing instructions was not problematic. Therefore, Kingsbridge contends that Clever

---

[2] The 13 added defendants are: Rite Aid; The Andersons, Inc; Nash Finch Company; Insular Trading Company, Inc.; Variety Distributors, Inc.; Kmart, Inc.; Ace Hardware Corporation; Duckwall-Alco Stores, Inc.; C&S Wholesale Grocers, Inc.; Sierra Pacific Crafts; Grocers Supply Company, Inc.; and Supervalu Inc.

Factory should be barred from pursuing its claims in the instant action based on the doctrines of equitable estoppel, acquiescence, waiver, and/or forfeiture. Alternatively, Kingsbridge argues Clever Factory's failure to promptly act to protect its legal rights related to the Crazy Eights, Old Maid, Go Fish, and Matching Flash Card Games should prevent Clever Factory from recovering any damages for activity by Kingsbridge that occurred prior to the filing of the instant lawsuit on December 16, 2011, because of the doctrine of laches and that the applicable statue of limitations for the Plaintiff's various claims limit the recoverable damages in this action. Finally, Kingsbridge contends that Counts III-VII of the Plaintiff's action are pre-empted by the Copyright Act.

### III. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith

Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

IV. ANALYSIS

A. Affirmative Defenses of Estoppel, Acquiescence, Forfeiture, Waiver, and Laches

Under Section 106 of the Copyright Act, the copyright owner alone has the exclusive right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, and to distribute copies of the work. See 17 U.S.C. §§ 106(1) and (3). Violation of any of these rights constitutes an infringement. 17 U.S.C. § 501(a). See Microsoft Corp. v. Compusource Distribs., Inc., 115 F. Supp. 2d 800, 804-05 (E.D. Mich. 2000). Defendant Kingsbridge does not address in its motion for summary judgment the two underlying elements of a copyright infringement claim, i.e., (1) that Clever Factory has ownership of valid copyrights for the works at issue, and (2) that there was a copying of Clever Factory's protected interests in the works at issue. Coles v. Wonder, 283 F.3d 798, 801 (6th Cir. 2002). See also Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003). Instead, Kingsbridge raises several affirmative defenses.

Defendant Kingsbridge argues that Clever Factory has waived or forfeited the claims it raises in the instant action. Neither defense supports summary judgment in favor of Kingsbridge. The two defenses are based on the theory that a plaintiff can relinquish a legal claim if it fails to pursue its legal rights because of either intentional conduct, as in the case of waiver, see Gary R. Price Revocable Trust v. Blackwell, 735 F.Supp.2d 804, 818 (M.D. Tenn. 2010), or negligent or inadvertent conduct, as in the case of forfeiture. See Days Inns Worldwide, Inc. v. Patel, 445 F.3d 899, 905 (6th Cir. 2006). Essential to either defense is evidence action or inaction by the plaintiff after a claim arises that can be viewed as a relinquishment of the claim. Defendant Kingbridge's argument, however, is that Clever Factory waived or forfeited the claims asserted in the instant

7

action before those claims even existed as a result of conduct occurring in 2007 and 2008. This argument simply has no merit.[3]

Each act of copyright infringement is a distinct harm that gives rise to an independent claim. See Bridgeport Music, Inc. v. Rhyme Syndicate Music, 376 F.3d 615, 621 (6th Cir. 2004); Stone v. Williams, 970 F.2d 1043, 1049-1050 (2d Cir. 1992). The instant lawsuit, filed on December 16, 2011, is based upon alleged acts of Kingsbridge that occurred no earlier than 2010, and the Plaintiff does not seek relief for any infringements that occurred in 2007 or 2008. See Amended Complaint (Docket Entry No. 82), at ¶¶ 35-38. The action was filed within the three year statute of limitations set out in Section 507(b) of the Copyright Act, and Defendant Kingsbridge has not provided any evidence that Clever Factory either acted or failed to act after the instant claims arose in any manner that could possibly constitute a wavier or forfeiture of the claims. See Roley v. New World Pictures, Ltd., 19 F.3d 479, 481 (9th Cir. 1994) (Section 507(b) . . . does not provide for a waiver of infringing acts within the limitation period if earlier infringements were discovered and not sued upon). The defenses of waiver and forfeiture defenses raised by Kingsbridge simply do not apply.

The Court also finds no merit in Defendant Kingsbridge's assertion of the affirmative defenses of equitable estoppel, acquiescence, or laches. The four elements for an equitable estoppel defense in a copyright infringement case are: "(1) plaintiff knew about defendant's infringing conduct; (2) plaintiff must intend that his conduct be acted on or must act in a way that the party asserting the estoppel had a right to believe it was so intended; (3) defendant must be ignorant of the

---

[3] Nowhere in its supporting Memorandum of Law does Kingsbridge cite to a case that applies the theories of waiver or forfeiture to copyright, trademark, or the other specific claims raised in the instant action. See Docket Entry No. 54, at 17-18. However, the Court assumes for the purposes of the motion for summary judgment that these general theories apply.

true facts; and (4) defendant must rely on plaintiff's conduct to its detriment." Quinn v. City of Detroit, 23 F. Supp. 2d 741, 752-53 (E.D. Mich. 1998) (citing Hampton v. Paramount Pictures Corp., 279 F.2d 100 (9th Cir.), cert. denied 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103 (1960)). The defense of acquiescence requires "a finding of conduct on the plaintiff's part that amounted to an assurance to the defendant, express or implied, that plaintiff would not assert his trademark rights against the defendant." Elvis Presley Enters., Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991) (citing Sweetheart Plastics, Inc. v. Detroit Forming, Inc., 743 F.2d 1039, 1046 (4th Cir.1984)); National Football League v. Rondor, Inc., 840 F. Supp. 1160, 1167 (N.D. Ohio 1993). A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it. Bridgeport Music, Inc. v. Justin Combs Pub., 507 F.3d 470, 493 (6th Cir. 2007). Although the doctrine of laches may be applied in copyright cases, it should be applied rarely and only in unusual circumstances. Id.

Initially, the Court notes that there is no evidence of any express or implied assurance from Clever Factory to Kingsbridge that Clever Factory would not assert its legal rights related to the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games. Instead, Defendant Kingbridge contends that it was reasonable for it to conclude that it could sell and/or distribute for sale alleged Knock-off Flash Card Games of Old Maid, Crazy Eights, Matching and Go Fish in 2010 and 2011 because: 1) the December 17, 2007, cease-and-desist letter from Clever Factory and other correspondence between Clever Factory and Kingsbridge in 2007 and 2008 only referred to Kingsbridge's sale of Knock-Off Flash Card Games of Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards; 2) the First Lawsuit only pertained to infringement of Clever Factory's protected interests related to the Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Flash Card

Games as evidenced by Exhibit C to the complaint in the First Lawsuit; and 3) Clever Factory took no other action pertaining to alleged sales of Knock-off Flash Card Games of Old Maid, Crazy Eights, Matching and Go Fish at any time prior to September 2011, when it sent a cease-and-desist letter to Kingbridge about them.

The Court finds Defendant Kingsbridge's position on these events to be inconsistent with a reasonable interpretation of what occurred in 2007 and 2008, and unsupported by the evidence. First, although Kingsbridge is correct that the December 17, 2007, cease-and-desist letter only referred to Kingsbridge's sale of Knock-off Flash Card Games of Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards, see Docket Entry No. 56-1, the contents of that letter do not define the scope of Clever Factory's subsequent ability to protect its legal interests in its copyrighted works. Indeed, communications between Clever Factory and Kingsbridge on June 2, 2008, and June 16, 2008, see Docket Entry Nos. 57-1 and 57-2, indicated that Kingsbridge had sold four additional titles of designs to Rite Aid as part of the same transaction between Kingsbridge and Rite Aid that involved the Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Knock-off Flash Card Games. These four additional titles were, in fact, the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games. At that point, it was not incumbent upon Clever Factory to submit a new or supplemental cease-and-desist letter to Kingsbridge regarding these four additional titles. Further litigation was available to Clever Factory to protect what then appeared to be a violation of its protected interests in the eight Flash Card Games. Clever Factory was entitled to file another lawsuit, which is exactly what it did.

The Court does not find it reasonable to view the complaint in the First Lawsuit as directed at protection of Clever Factory's legal interests in only the Bible Heroes, Bible Trivia, Build-a-Word,

and Puzzle Cards Flash Card Games. The complaint specifically sets out that Clever Factory had protected interests in all eight of the Flash Card Games at issue, as well as the packaging and instructions, and in the "Good Grades" trademark, and explicitly lists the copyright registrations for their works. See Docket Entry No. 1 in First Lawsuit, at ¶¶10-18. Additionally, the complaint clearly alleges that the defendants copied works in which Clever Factory had protected interests, that counterfeit flash cards were manufactured based upon this copying, and that Kingsbridge sold and distributed to Rite Aid approximately 48,000 Knock-off Flash Cards to the detriment of Clever Factory. Id. at ¶¶ 16 and 20-28. While Defendant Kingbridge is correct that Exhibit C to the complaint in the First Lawsuit contains only copies of allegedly infringing works for the Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Flash Card Games, Clever Factory was not required to include as an exhibit to the complaint a copy of each alleged infringing Knock-off Flash Card. The fact that Clever Factory did not attach copies of the alleged infringing Knock-off Flash Cards for the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games is of no consequence given the clear allegations made in the complaint itself. Kingsbridge's stance that the First Lawsuit is limited to the content of Exhibit C would render meaningless the allegations of the actual complaint and is an unreasonably narrow interpretation of the Plaintiff's complaint in the First Lawsuit.

Furthermore, such an interpretation is at odds with facts known to Kingsbridge that had been developed in 2007 and 2008 prior to the First Lawsuit being filed. In the January 10, 2008, e-mail from Kingsbridge to Clever Factory sent on the heels of the December 17, 2007, cease-and-desist letter, counsel for Kingsbridge wrote that only 8,340 sets of the accused knock-off flash cards were sold to Rite Aid, which, according to Kingsbridge, was its only customer for this one time purchase.

See Docket Entry No. 66-2. Because the December 17, 2007, cease-and-desist letter notified Kingsbridge about infringements of only the Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Flash Card Games, the e-mail and the amounts referenced in the e-mail clearly referred to only these four Flash Card Games. However, the June 2, 2008, letter from Clever Factory to Kingsbridge and the return June 16, 2008, correspondence from Kingsbridge to Clever Factory indicate that Kingbridge's total shipment to Rite Aid was for 48,108 units, which consisted of six different sets of the eight flash card games in combinations of two games per set. See Docket Entry No 57-1. Accordingly, Clever Factory's reference in the complaint in the First Lawsuit to 48,000 Knock-off Flash Card Games could only be read by Kingsbridge as meaning the alleged infringements of all of the protected works of Clever Factory and not just those works set out in Exhibit C. Any other interpretation would be patently unreasonable in light of its own January 10, 2008, e-mail that stated that the infringing works set out in Exhibit C totaled only 8,340 units.

Defendant Kingsbridge also maintains in its Reply Memorandum that the $36,000.00 offer of judgment it made in the First Lawsuit, which Clever Factory accepted, was based upon its profits and potential exposure for the sale of only its Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Knock-off Flash Card Games. See Docket Entry No. 71, at 5. In support, it offers the supplemental declaration of Robert Sommer (Docket Entry No. 73), at ¶ 3. The Court has reviewed this declaration and, at the very least, it is unclear to the Court how, in light of the January 10, 2008, e-mail indicating that 8,340 units of these games had been sold for a total revenue of $5,254.20, a calculation of profits of approximately $36,000.00 can be based upon sales of only the Bible Heroes, Bible Trivia, Build-a-Word, and Puzzle Cards Knock-off Flash Card Games.

Finally, the Court finds no evidence supporting an assertion that Clever Factory was not diligent in protecting its legal interests in the Old Maid, Crazy Eights, Matching, and Go Fish Flash Card Games and stood by knowing that infringing products were being sold. As noted above, Clever Factory promptly filed the First Lawsuit asserting claims for infringements it believed had occurred in 2007 and 2008 upon Kingsbridge's sale and distribution to Rite Aid of the 48,000 units at issue in that lawsuit. Upon learning of evidence of subsequent infringements, Clever Factory promptly filed the instant action. Kingsbridge's assertion of laches simply has no merit.

In his declaration, Robert Sommer avers that "Kingsbridge has sold its Old Maid, Crazy Eights, Matching, and Go Fish cards in the same packaging and with the same instructions since 2007." See Docket Entry No. 56 at ¶ 7. To the extent that Kingsbridge relies upon this statement as evidence that it continuously sold these infringing games from 2007 to 2011, and attempts to infer that the Plaintiff ignored several years of infringing sales, the Court finds Kingsbridge's position to be questionable in light of the evidence before the Court. The June 2, 2008, letter indicates that, as of May 19, 2008, 45,452 of the entire 48,108 units of the infringing products sold to Rite Aid had been either sold or recalled, leaving only 2,656 of the units unaccounted for as either "still in Rite-Aid stores or somewhere in the recall pipeline." See Docket Entry No. 57-1. Although it is not clear from the evidence before the Court the final outcome of these 2,656 units, there is no evidence that Kingsbridge sold or distributed for sale any additional units of the Old Maid, Crazy Eights, Matching and Go Fish Knock-off Flash Card Games at any point prior to the end of 2010 or in 2011.

After review of all of the evidence presented by the parties, the Court finds that there is no evidence of conduct or lack thereof on the part of Clever Factory which could have reasonably been viewed by Kingsbridge as an indication that Clever Factory permitted or acquiesced in the sale

and/or distribution of Knock-off Flash Card Games of the Old Maid, Crazy Eights, Matching, and Go Fish card games and their packaging and Instructions. To the contrary, the Court finds that the evidence indicates that the course of action taken by Clever Factory indicated that it would diligently seek to protect its legal interests in all of its protected works, including filing litigation. Any prejudice suffered by Defendant Kingsbridge because of its sales of Old Maid, Crazy Eights, Matching, and Go Fish Knock-off Flash Card Games in 2011 and beyond was the result of Kingsbridge's own actions and cannot be attributed to any action or inaction of Clever Factory. The Court finds no basis to estop Clever Factory from pursuing the claims raised in the instant action. Likewise, the Court finds no evidence of conduct or a lack thereof on the part of Clever Factory that shows a lack of diligence on its part in pursuing the protection of its legal interests in the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games.

B. Statute of Limitations

It is undisputed that the applicable statute of limitations for the seven causes of action brought by Clever Factory is either one year or three years. However, Kingsbridge does not actually argue that any of the claims raised in the instant action are barred by the applicable statute of limitations. Although the allegations in the Amended Complaint refer at one point to "2010," see Docket Entry No. 82, at ¶ 38, the main allegations in the Amended Complaint allege that the infringing conduct occurred in 2011 and afterwards.

Accordingly, given that this action was filed on December 16, 2011, the Plaintiff's claims generally fall within even the more limited one year statute of limitations. Because Kingsbridge does not specifically seek dismissal of an actual claim that is based upon an event falling outside the

14

applicable statute of limitations and it does not appear to the Court that there is any basis for damages for events falling outside the applicable statute of limitations, it is not appropriate for the Court to address any statute of limitations defense in this context. Accordingly, the motion for summary judgment is denied without prejudice as to this defense.

C. Preemption of State Law Claims

As an initial matter, the parties' filings related to the preemption defense raised by Kingsbridge indicate that there is a certain lack of agreement about the legal foundation for Counts III and IV. In Count III, Clever Factory alleges that the Defendants engaged in acts of trade dress infringement "in violation of the common law" and, in Count IV, Clever Factory alleges that the Defendants engaged in acts of unfair competition "in violation of the common law." See Docket Entry No. 82, at 12-13. In contrast, in the three subsequent causes of action, Counts V-VII, Clever Factory specifically asserts that each of these counts is based upon violations of Tennessee law. Id. at 13-15. In its motion for summary judgment, Defendant Kingsbridge views Counts III and IV, like Counts V-VII, as alleging claims brought under Tennessee law and contends that all five claims are preempted by the Copyright Act. See Docket Entry No. 54, at 24-25. However, in responding to the preemption argument, Clever Factory specifically refers to only Counts V-VII as the causes of action brought under Tennessee law. See Docket Entry No. 63, at 21-24.

Given that the Plaintiff is the drafter of its own claims, the Court relies upon the Plaintiff's statement that only Counts V-VII are brought under Tennessee law and so construes the First Amended Complaint. Because Counts I and II of the First Amended Complaint refer to the Copyright Act and the Lanham Act, respectively, Counts III and IV of the First Amended Complaint

can only be construed as asserting claims under federal common law. Whether such claims are viable is a matter that is not before the Court in the present stance of the action and one which the Court shall not address in this context.[4]

Section 301 of the Copyright Act broadly preempts state law claims, as follows:

> On and after January 1, 1978, all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by section 106 in works of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by sections 102 and 103, whether created before or after that date and whether published or unpublished, are governed exclusively by this title. Thereafter, no person is entitled to any such right or equivalent right in any such work under the common law or statutes of any State.

17 U.S.C. § 301(a). The Sixth Circuit has held that, "under § 301, a state common law or statutory claim is preempted if: (1) the work is within the scope of the 'subject matter of copyright,' as specified in 17 U.S.C. §§ 102, 103; and, (2) the rights granted under state law are equivalent to any exclusive rights within the scope of federal copyright as set out in 17 U.S.C. § 106." Wrench LLC v. Taco Bell Corp., 256 F.3d 446, 453 (6th Cir. 2001). See also ATC Distribution Group, Inc. v. Whatever It Takes Transmissions & Parts, Inc., 402 F.3d 700, 713 (6th Cir. 2005). "These requirements are often referred to as the 'subject matter requirement' and the 'general scope' or 'equivalency' requirement." Stromback v. New Line Cinema, 384 F.3d 283, 300 (6th Cir .2004) (citing Wrench, 256 F.3d at 453). See also National Basketball Ass'n v. Motorola, Inc., 105 F.3d 841, 848 (2d Cir. 1997).

---

[4] Compare Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 670 (Fed. Cir. 1988) (there is no federal common law of unfair competition); International Order of Job's Daughter v. Lindeburg & Co., 633 F.2d 912, 915 (9th Cir. 1980) (there is no federal common law governing trademark infringement cases), with Tennessee Walking HorseBreeders and Exhibitors Assoc. v. National Walking Horse Assoc., 528 F.Supp.2d 772 (M.D. Tenn. 2007) (recognizing without discussion a claim for federal common law unfair competition).

The Plaintiff's unfair competition claim (Count V) is based on the allegation that Defendant Kingsbridge "passed off" to the public the Knock-off Flash Card Games as the Flash Card Games of Plaintiff, flash card games in which the Plaintiff has interests protected by the Copyright Act. Because the works at issue for this claim clearly fall within the scope of the subject matter of the Copyright Act, the first element for preemption is satisfied. As to the second element, another Judge in this District has determined that a claim for unfair competition brought under Tennessee common law that is based upon the sale of knock-off or passed-off works protected under the Copyright Act is preempted by the Copyright Act. See Brainard v. Vassar, 625 F.Supp.2d 608, 622 (M.D. Tenn. 2009) (Trauger, J.).[5] See also R.W. Beck,Inc. v. E3 Consulting, LLC, 577 F.3d 1133, 1146-49 (10th Cir. 2009); Kodadek v. MTV Networks, Inc., 152 F.3d 1209, 1212 (9th Cir. 1998); Hua-Cheng Pan v. Kohl's Dept. Stores, Inc., 2013 WL 5181144 (S.D. Ohio Sept. 12, 2013). This Court sees no reason to diverge from the Court's holding in Brainard.[6]

Without reaching the merits of the Plaintiff's claims under Tenn. Code. Ann. § 47-25-512 (Count VI) or the TCPA (Count VII), the Court finds that Defendant Kingsbridge's generic

---

[5] Although the Plaintiff cites to an earlier published decision in the Brainard case, 561 F.Supp.2d 922 (M.D. Tenn. 2008), for the proposition that "[t]his Court has made it abundantly clear that the Copyright Act does not preempt a Tennessee common law unfair competition claim arising out a defendant's alleged act of passing off plaintiff's works as their own," see Docket Entry No. 63, at 29, a close reading of the 2008 decision shows that the Court in Brainard did not actually address the issue of preemption of the Tennessee unfair competition claim in the earlier decision even though the synopsis of the decision provided by Westlaw suggests otherwise. In the 2009 decision, however, the Court specifically relied on preemption as an alternative basis upon which to dismiss the unfair competition claim.

[6] The Court finds A&M Records, Inc. V. M.V.C. Dist. Corp., 574 F.2d 312 (6th Cir. 1978), a case cited by the Plaintiff in opposition to preemption, to be inapplicable because it involved claims that arose prior to the effective date of 17 U.S.C. § 301(a) and, therefore did not address preemption under Section 301. See Artie Fields Prods., Inc. v. Channel 7 of Detroit, Inc., 1994 WL 559331 (E.D. Mich. June 10, 1994); Meyer v. Giles, 1992 WL489770 (W.D. Mich. Nov. 30, 1992).

preemption argument is not persuasive as to these claims, which the Plaintiff couches in terms of protections associated with its trade dress, see Docket Entry No. 1, at 10 ¶ ¶ 49-51 and Docket Entry No. 82, at 14, ¶¶ 64-66, and not the interests protected by the Copyright Act. To recover for trade dress infringement, a party must show "(1) the trade dress is not functional; (2) the trade dress is distinctive in the marketplace and has acquired 'secondary meaning,' thereby indicating the source of the goods; and (3) the trade dress of the accused product is confusingly similar." General Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 414 (6th Cir. 2006). While the Court acknowledges that there is some overlap between these two protected interests, in the face of the Plaintiff's trade dress claims, Kingsbridge has not set forth any specific argument showing why these claims are preempted by the Copyright Act. See Kano Labs., Inc. v. Clenair Mfg., Inc., 2013 WL 1775446 (M.D. Tenn. April 25, 2013) (Campbell, J.) (finding trade dress claims were not preempted by the Copyright Act).

## CONCLUSION

For the reasons stated herein, the Motion for Summary Judgment of Defendant Kingsbridge will be DENIED in all respects except that the motion will be GRANTED to the extent that Count V of the First Amended Complaint is preempted.

The Cross Motion for Partial Summary Judgment filed by Plaintiff Clever Factory is TAKEN UNDER ADVISEMENT.

An appropriate Order will enter.

*[signature: Juliet Griffin]*
JULIET GRIFFIN
United States Magistrate Judge