IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

THE CLEVER FACTORY, INC.         )
                                   )
     v.                     )      NO. 3:11-1187
                                   )
KINGSBRIDGE INTERNATIONAL, INC., et al.  )

**M E M O R A N D U M**

Pursuant to the provisions of 28 U.S.C. § 636(c) and Rule 73(b) of the Federal Rules of Civil Procedure, the parties in this action have consented to have the Magistrate Judge conduct any and all proceedings in the action, including the entry of a final judgment. <u>See</u> Order entered February 22, 2012 (Docket Entry No. 24). The action is currently set for a jury trial on June 17, 2014. <u>See</u> Order entered April 22, 2013 (Docket Entry No. 89).

Presently pending before the Court is the motion for partial summary judgment filed by Defendants Kingsbridge International, Inc. and Rite Aid Corporation (Docket Entry No. 140). Also before the Court is the Plaintiff's motion for reconsideration (Docket Entry No. 148) of the Court's Order entered January 14, 2014 (Docket Entry Nos. 138-139), denying the Plaintiff's own motion for partial summary judgment (Docket Entry No. 60).

**I. BACKGROUND**

The factual background of this action is fully set out in the Court's Memorandum entered September 25, 2014 (Docket Entry No. 129), and need not be recounted herein. A summary of the background is as follows.

Clever Factory, Inc. ("Clever Factory") has all ownership interests in and holds copyright registrations for visual artworks that are used in adaptations of eight different game cards known as "Crazy Eights," "Old Maid," "Go Fish," "Matching," "Bible Heroes," "Bible Trivia," "Build-a-Word," and "Puzzle Cards" ("the Works"). It also has all ownership interests in and holds copyright registrations for literary works that comprise original instructions on how to play the adaptions of the game cards for "Old Maid," "Crazy Eights," and "Build-a-Word" ("the Instructions"). Clever Factory uses the Works and Instructions to create original adaptations of flash card games ("Flash Card Games") that it manufactures, promotes, and sells throughout the United States. Clever Factory also holds a trademark registration for the phrase "Good Grades," which it uses in connection with its products.

On December 16, 2011, Clever Factory brought this action against Kingsbridge International, Inc. ("Kingsbridge") and Rite Aid Corporation ("Rite Aid") seeking injunctive relief and damages.[1] Clever Factory alleges that, during 2011, Kingsbridge sold or distributed for sale 260,000 sets of "Crazy Eights," "Old Maid," "Go Fish," and "Matching" flash card games ("Knock-off Flash Card Games") that were substantially similar to or otherwise the same as Clever Factory's Flash Card Games and that copied the copyrighted Works and Instructions, as well as the unique design elements ("Design Elements") and the trade dress associated with Clever Factory's Flash Cards Games. Clever Factory alleges that the Defendants' actions caused it injury and violated its legal rights. Specifically, Clever Factory asserts seven counts: 1) copyright infringement in violation of

---

[1] Twelve other defendants, which Clever Factory alleged had purchased Knock-off Flash Card Games from Kingsbridge and re-sold them to consumers in the United States, were named in the action. These defendants served offers of judgment on Clever Factory, which Clever Factory accepted. See Docket Entry Nos. 114 and 118.

17 U.S.C. § 501 (the "Copyright Act"); 2) false designation of origin and unfair competition in violation of 15 U.S.C. § 1125(a) of the Lanham Act (the "Lanham Act"); 3) trade dress infringement in violation of common law; 4) unfair competition in violation of common law; 5) unfair competition in violation of Tennessee state law; 6) violation of Tenn. Code. Ann. § 47-25-513, the Tennessee anti-dilution statute; and 7) violation of Tenn. Code Ann. § 47-18-104, the Tennessee Consumer Protection Act ("TCPA"). See Complaint (Docket Entry No. 1) and Amended Complaint (Docket Entry No. 82).[2]

Kingsbridge initially moved for summary judgment arguing that Clever Factory failed to protect its legal rights related to the Old Maid, Crazy Eights, Matching and Go Fish Flash Card Games prior to September 21, 2011, and, thus indicated to Kingsbridge that its continued sale of the Knock Off Flash Card Games in its existing packaging and with the existing instructions was not problematic. Kingsbridge contended that Clever Factory's claims were barred by the doctrines of equitable estoppel, acquiescence, and forfeiture, that the damages claims were barred due to laches and/or implied waiver or were limited by the applicable statute of limitations, and that Counts III-VII were preempted by the Copyright Act to the extent that they were brought under state law. See Docket Entry No. 53. By Memorandum and Order entered September 24, 2013 (Docket Entry Nos. 129 and 130), the Court denied Kingsbridge's motion for summary judgment in all respects except as to Count V, which was dismissed as preempted by the Copyright Act.

---

[2] Clever Factory pursued a prior lawsuit in the Middle District of Tennessee ("the First Lawsuit") against Kingsbridge and Rite Aid based on Knock-off Flash Card Games sold in 2007. See The Clever Factory, Inc. v. Rite Aid Corporation, et al., 3:08-1056. Shortly after the First Lawsuit was filed, Rite Aid and Kingsbridge made an offer of judgment for $36,000.00 that was accepted by Clever Factory, and final judgment was entered against Rite Aid and Kingsbridge by Order entered November 24, 2008. See Docket Entry No. 8 in First Lawsuit.

Clever Factory also moved for partial summary judgment arguing that the uncontested evidence showed that Kingsbridge undisputedly distributed and sold products that it knew infringed upon Clever Factory's protected copyrights and, thus, partial summary judgment should be entered in favor of Clever Factory on the issue of liability under the Copyright Act. See Docket Entry No. 60. By Memorandum and Order entered January 14, 2014 (Docket Entry Nos. 138 and 139), the Court denied Clever Factory's motion for partial summary judgment, finding that Clever Factory had not supported its motion in a sufficient manner to warrant granting partial summary judgment in its favor on the issue of liability under the Copyright Act.

## II. DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

In their second motion for summary judgment, Kingsbridge and Rite Aid seek partial summary judgment arguing that: 1) Clever Factory is barred from an award of statutory damages and attorney's fees under the Copyright Act and may only seek actual damages because the alleged infringements commenced prior to Clever Factory's registrations; and 2) Clever Factory's claims for trade dress infringement under the Lanham Act, unfair competition, dilution, and violations of the TCPA should be dismissed as a matter of law because genuine issues of material fact do not exist on these claims. In support of their motion, the Defendants rely on their Statement of Undisputed Facts (Docket Entry No. 144), the Declaration of Edward R. Schwartz (Docket Entry No. 146), and the declarations and attached exhibits thereto of Robert Sommer (Docket Entry No. 140-3 to 140-8), Paul Foster (Docket Entry No. 140-1), and Nancy Bortz (Docket Entry No. 140-2).

In response to the Defendants' argument regarding damages under the Copyright Act, Clever Factory argues that the infringements at issue in the instant action occurred in 2011 and are

4

sufficiently removed from the 2007 infringements so as to constitute new and separate infringements that can support an award of statutory damages and attorney's fees under the Copyright Act. With respect to the arguments for summary judgment on its remaining claims, Clever Factory argues that genuine issues of material fact exist as to each of these claims that requires the denial of summary judgment. See Memorandum in Opposition (Docket Entry No. 155). In support of its response, Clever Factory relies on the declarations and attached exhibits thereto of Andy Hyde (Docket Entry No. 150) and Tedd Levine (Docket Entry No. 151) and its response to the Defendants' Statement of Undisputed Facts (Docket Entry No. 156).

### III. PLAINTIFF'S MOTION FOR RECONSIDERATION

Clever Factory argues that Defendant Kingsbridge, in its recently filed motion for partial summary judgment and supporting declaration of Robert Sommer, has unequivocally admitted to having copied and sold game cards that are identical to the Flash Game Cards that are protected by valid copyright registrations owned by Clever Factory. Thus, Clever Factory argues that, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure, the Court should reconsider its prior finding that genuine issues of material fact exist on the Copyright Act claim and should grant summary judgment to Clever Factory on the issue of Kingsbridge's liability under the Copyright Act. See Memorandum in Support (Docket Entry No. 152). In support, Clever Factory relies upon the declarations and attached exhibits thereto of Andy Hyde and Tedd Levine.

In response, Kingsbridge contends that Clever Factory does not rely upon a change in the law or "new evidence" in support of its request for reconsideration but merely presents essentially a re-argument of its original motion. Accordingly, Kingsbridge asserts that Clever Factory has not

satisfied the standards required for reconsideration of the Court's prior ruling that genuine issues of material fact existed on the issue of Kingsbridge's liability under the Copyright Act.

## IV. STANDARD OF REVIEW

A motion for summary judgment is reviewed under the standard that summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the

6

non-moving party's case.'" <u>Hayes v. Equitable Energy Res. Co.</u>, 266 F.3d 560, 566 (6th Cir. 2001) (quoting <u>Celotex Corp.</u>, 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." <u>Goins v. Clorox Co.</u>, 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. <u>Banks v. Wolfe Cnty. Bd. of Educ.</u>, 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. <u>See</u> <u>Lujan v. National Wildlife Fed'n</u>, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. <u>Bell v. Ohio State Univ.</u>, 351 F.3d 240, 247 (6th Cir. 2003) (quoting <u>Anderson</u>, 477 U.S. at 252).

**V. ANALYSIS**

1. Copyright Act Claim (Count I)

The parties' motions address different aspects of this claim. In its motion for reconsideration, Clever Factory asks that the Court revisit the issue of whether liability on this claim should be determined by the Court in favor of Clever Factory on summary judgment or should be reserved for determination by the jury because genuine issues of material fact exist on the claim. The

Defendants' motion is directed only at the issue of what damages are permissible for recovery by Clever Factory on this claim. The Court shall address the motion of Clever Factory first.

Under Section 106 of the Copyright Act, the copyright owner alone has the exclusive right to reproduce the copyrighted work, to prepare derivative works based upon the copyrighted work, and to distribute copies of the work. See 17 U.S.C. §§ 106(1) and (3). Violation of any of these rights constitutes an infringement. 17 U.S.C. § 501(a). See Microsoft Corp. v. Compusource Distribs., Inc., 115 F. Supp. 2d 800, 804-05 (E.D. Mich. 2000). The two underlying elements of a copyright infringement claim are (1) that Clever Factory has ownership of valid copyrights for the works at issue, and (2) that there was a copying of Clever Factory's protected interests in the works at issue. Coles v. Wonder, 283 F.3d 798, 801 (6th Cir. 2002). See also Kohus v. Mariol, 328 F.3d 848, 853 (6th Cir. 2003).

In the Memorandum entered January 14, 2014, the Court previously found that Clever Factory had satisfied the first element of its Copyright Act claim. See Docket Entry No. 138, at 7. As to the second element, the Court found:

> After review of the parties' filings, the Court finds that the Plaintiff has not supported its motion for partial summary judgment in a sufficient manner to warrant granting partial summary judgment in its favor on the issue of liability. Although the Court does not agree with Defendant Kingsbridge's statement that the Plaintiff's motion fails to analyze the copyright infringement claim, the Court nonetheless finds that the Plaintiff's motion sets out only a cursory legal analysis of the copyright claim at issue.[footnote omitted.] Further, the Court is not persuaded that the two Declaration statement's (sic) made by Mr. Sommer, by themselves, are undisputed and uncontroverted evidence of a tacit admission of either liability by Kingsbridge or of copying as required for the Plaintiff's claim. The Plaintiff fails to support its motion with an evidentiary basis that compels a finding that the copying element of the Plaintiff's claim has been satisfied. That is not to say that an evidentiary basis supporting the Plaintiff's claim does not exist, only that it has not been clearly presented to the Court in the context of the pending motion for partial summary judgment.

Id. at 9.

The Court will not reconsider this decision. The Plaintiff has not presented a persuasive basis that the Court should reconsider its prior determination that genuine issues of material fact exist on the issue of liability on the Copyright claim that must be resolved by the trier of fact and that summary judgment in favor of the Plaintiff is not warranted on this claim.

The Court now turns to the Defendants' argument as to the proper scope of recoverable damages for this claim. The Copyright Act provides that an infringer is liable for either 1) the copyright owner's actual damages and any additional profits of the infringer, or 2) statutory damages, including an increased award in cases of willful infringement. 17 U.S.C. § 504. In addition, Section 505 provides for the award of costs and attorney's fees at the district court's discretion. 17 U.S.C. § 505. However, 17 U.S.C. § 412(1) limits the scope of these two sections by providing that no award of statutory damages or of attorney's fees, as provided in Sections 504 and 505, shall be made for:

> (1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or

> (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

See Johnson v. Jones, 149 F.3d 494, 504-05 (6th Cir. 1998).

The Defendants argue that it is undisputed that Clever Factory first published its asserted copyrighted works in 2004 but did not register copyrights for the Matching, Old Maid, and Crazy Eights works and the Old Maid and Crazy Eights instructions until April 2007 and the Go Fish works until July 2008. The Defendants contend that Kingsbridge began displaying, promoting, selling and

distributing the accused works in late 2006 and continued such activities until the present action was filed in 2011.  Accordingly, the Defendants argue that awards of statutory damages and attorney's fees against Kingsbridge are barred since the accused copyright infringement commenced before registration of the asserted copyrights and continued thereafter until the present action was filed in 2011.  Defendant Rite Aid  argues that its infringements should be viewed in the same manner as those of Defendant Kingsbridge in terms of when the infringements commenced for the purposes of Section 412's limitation on the scope of recoverable damages.

Clever Factory acknowledges that the general law upon which the Defendants rely is correct but argues that the alleged infringements at issue in the instant lawsuit occurred in 2011 and afterwards and should be viewed as separate and distinct acts of infringement from those occurring in 2007, because of the length of time between the events and because of the distinct and differing amounts of infringing products distributed and sold by Kingsbridge.  Thus Clever Factory contends that the acts at issue in this lawsuit commenced after the effective date of registration for Clever Factory's works.  As a result, Clever Factory contends that it may elect to recover statutory damages and attorney's fees in this action.  At a minimum, Clever Factory asserts that there is a genuine issue of material fact as to whether the Defendants' post-registration infringements were continuing and ongoing or were separate and distinct from the Defendants' pre-registration infringements.

The critical inquiry is when the alleged infringements at issue in this lawsuit commenced.  As stated by the Sixth Circuit, "[e]very court to consider this question has come to the same conclusion; namely, that infringement "commences" for the purposes of § 412 when the first act in a series of acts constituting continuing infringement occurs."  Johnson, 149 F.3d at 506.  At first blush, the issue would seem to be easily resolved in favor of the Defendants.  However, there is case

law that supports the view that pre-registration acts of infringement and post-registration acts of infringement are not part of a single ongoing act of infringement when there was a cessation of activity between the two infringing acts for an appreciable time period.  See Troll Co. v. Uneeda Doll Co., 483 F.3d 150, 158-59 (2nd Cir. 2007); Cotter v. Christus Gardens, Inc., 238 F.3d 420 (6th Cir. 2000) (it was proper to instruct the jury "to determine whether the activities were part of a continuing, ongoing infringement or were separate, distinct acts of infringement" when there was a four-year gap between the time of the first alleged infringement and the second alleged infringement); Rosen v. Netrfronts, Inc., 2013 WL 2155185, *2 (C.D. Cal. May 13, 2013); Keeling v. New Rock Theater Prods., LLC, 2012 WL 5974009, *2 (S.D. N.Y. Nov. 29, 2012 ); Niemi v. American Axle Mfg. & Holding Inc., 2008 WL 905558, *15 (E.D. Mich. Mar. 31, 2008).

The Court agrees with the rationale of this line of cases and declines to grant summary judgment to the Defendants on this issue.  Whether the alleged infringements in 2011 and afterwards were part of a single on-going act that commenced prior to Clever Factory's registrations or were separate and distinct acts of infringement sufficient to support an award of statutory damages are questions to be answered at trial.


2. Lanham Act Claim (Count II)

Clever Factory's Lanham Act claim is set out in its pleadings as follows:

The Defendants' use of Plaintiff's trade dress constitutes the use of false or misleading designations of origin and/or false representations of fact in violation of 15 U.S.C. § 1125(a), in that such conduct is likely to cause consumers to be confused, mistaken or deceived into believing that the offending products originate with, or are sponsored by Plaintiff, and/or Defendants are authorized licensees, distributors or retailers of Plaintiff.

Amended Complaint (Docket Entry No. 82), at 11-12, ¶ 46. Clever Factory describes its trade dress in the Flash Game Cards as "[encompassing] the unique packaging, which incorporates original images, lettering, and layouts" that "are non-functional" and "have acquired secondary meaning" and that "Kingsbridge's use of such features in connection with the Knock-off Game Cards is likely to cause confusion in the marketplace as to the source of such goods." Id. at 8, ¶ 29. Clever Factory further alleges that:

> Due to the exclusive and widespread use by Plaintiff of the non-functional design features used in connection with the packaging of the Game Cards, the trade dress in such products has acquired enormous value and recognition in the United States. Such trade dress is well known to the consuming public and the trade as identifying and distinguishing Plaintiff as the exclusive and unique source of the products that are used in connection with such trade dress.

Id. at 8, ¶ 30.[3]

Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), protects from infringement the unregistered "trade dress" of a product. Abercrombie & Fitch Stores, Inc. v. American Eagle Outfitters, Inc., 280 F.3d 619, 629 (6th Cir. 2002). Trade dress refers to "the image and overall appearance of a product. It embodies that arrangement of identifying characteristics or decorations connected with a product, whether by packaging or otherwise, that makes the source of the product distinguishable from another and promotes its sale." Id. (brackets, ellipsis, and internal quotation marks omitted). Trade dress has also been described as the "'design or packaging of a product' which has acquired a 'secondary meaning' sufficient 'to identify the product with its manufacturer

---

[3] According to Clever Factory, Kingsbridge did not copy the trade dress for the Go Fish Flash Card Game. See Amended Complaint (Docket Entry No. 82), at ¶ 28. Thus, the trade dress claim encompasses alleged violations as to only the Matching, Old Maid, and Crazy Eights Flash Card Games.

or source.'" Gen. Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 414 (6th Cir. 2006) (quoting

TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 28, 121 S.Ct. 1255, 149 L.Ed.2d 164

(2001)). To recover for trade dress infringement, a party must show (1) the trade dress is not

functional, (2) the trade dress is distinctive in the marketplace and has acquired a 'secondary

meaning,' thereby indicating the source of the goods, and (3) the trade dress of the accused product

is confusingly similar. Gen. Motors Corp, 468 F.3d at 414.

The Defendants argue that Clever Factory has not satisfied the first two elements of its claim.

Specifically, the Defendants contend that Clever Factory cannot show that its alleged trade dress is

capable of serving a source-indicating function, rather than being merely aesthetic, cannot show that

its alleged trade tress has acquired a distinctive and secondary meaning, and cannot show that this

distinctive and secondary meaning arose before 2007, when the Defendants first began using the

accused trade dress. See Docket Entry No. 142, at 18.[4]

The Defendants' argument regarding the functionality element fails to support summary

judgment in their favor. In general terms, a product feature is functional "if it is essential to the use

---

[4] Although the Defendants refer to a lack of evidence of intent and cite to Groeneveld Transp. Efficiency, Inc. v. Lubecore Int'l, Inc., 730 F.3d 494, 514-15 (6th Cir. 2013), they do so only within the context of attacking the second element of the Lanham Act claim. The Defendants do not raise an argument regarding the third element of a Lanham Act claim, the "confusingly similar" or likelihood of confusion element, which is the element addressed by the Court in Groeneveld. In their reply, the Defendants re-affirm that the focus of their motion for summary judgment on the Lanham Act claim does not involve a challenge to the third element of the claim. See Docket Entry No. 157, at 2-3.

Accordingly, the arguments made by the Plaintiff regarding the sufficiency of the evidence supporting the third element of the Lanham Act claim, see Docket Entry No. 155, at 15-21, are misplaced. Even though some of the concepts involved with the second and third elements may overlap, the Sixth Circuit has affirmed that a plaintiff pursuing a Lanham Act claim must establish a factual basis for each of the three separate elements of the claim. See Watch What Develops Franchise Concepts, Inc. v. Par Five, Inc., 825 F.2d 412 (6th Cir. 1987).

13

or purpose of the article or if it affects the cost or quality of the article." Inwood Laboratories, Inc. v. Ives Laboratories, Inc., 456 U.S. 844, 850 n.10, 102 S.Ct. 2182, 72 L.Ed.2d 606 (1982). The Defendants have not actually argued that the alleged trade dress involved in the packaging of the Flash Game Cards is a functional feature. Indeed, the mere packaging of a product normally does not relate to functionality of the product itself. See Sherwin-Williams Co. v. JP Int'l Hardware, Inc., 2013 WL 6767815, **3-4 (N.D. Ohio Dec. 13, 2013); Someday Baby, Inc. v. JTG of Nashville, Inc., 744 F. Supp. 811, 8113-4 (M.D. Tenn. 1990). To the extent that the Defendants intend to make an argument regarding aesthetic functionality, they have not provided an actual legal analysis of how the packaging of the Plaintiff's product is aesthetically functional. See Abercrombie & Fitch, 280 F.3d at 641. See also Maker's Mark Distillery, Inc. v. Diageo N. Am., Inc., 679 F.3d 410, 418 (6th Cir. 2012) (noting a question exists as to the validity of the aesthetic functionality doctrine within the Sixth Circuit); Antioch Co. v. W. Trimming Corp., 347 F.3d 150, 156 (6th Cir. 2003) (questioning applicability of the aesthetic functionality doctrine).[5] The Court finds the two cases from the Second Circuit upon which the Defendants rely, Knitwaves, Inc. v. Lollytogs Ltd., 71 F.3d 996, 1006 (2d Cir. 1995), and Banff Ltd. v. Express, Inc., 921 F. Supp. 1065 (S.D.N.Y. 1995), to be factually distinguishable and unpersuasive given the facts of the instant lawsuit. Both cases involve the design of a product itself, as opposed to the packaging of a product.

For trade dress claims based on product packaging, such as the one brought by Clever Factory, the plaintiff satisfies the second element by showing either the inherent distinctiveness of

---

[5] Additionally, the Court does not agree with the Defendants that Clever Factory has described its purported trade dress as "merely aesthetic." Clever Factory used this phrase in its complaint to refer to the unique design elements that are encompassed in Clever Factory's protected works. See Docket Entry No. 82, at 7, ¶ 26.

its trade dress or that its trade dress has acquired a secondary meaning. See Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc., 270 F.3d 298, 309 (6th Cir. 2001); Kano Labs., Inc. v. Clenair Mfg., Inc., 2013 WL 5758651, *2 (M.D.Tenn. Oct. 24, 2013). Trade dress is inherently distinctive if its intrinsic nature serves to identify a particular source. Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S. 205, 210-11, 120 S.Ct. 1339, 146 L.Ed.2d 182 (2000). Trade dress has a secondary meaning when, in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself. Id.; Gen. Motors Corp., 468 F.3d at 418. Both showings are directed at the issue of whether the trade dress at issue identifies the product with its manufacturer or source. The Defendants argue only that Clever Factory cannot show the existence of a secondary meaning. See Docket Entry No. 142, at 16-17.[6]

Clever Factory bears the burden of proof to show a secondary meaning. General Motors, 468 F.3d at 417. To demonstrate a secondary meaning, the evidence must show that "in the minds of the public, the primary significance of the trade dress is to identify the source of the product rather than the product itself." Inwood Labs., 456 U.S. at 851, 102 S.Ct. 2182 n. 11; Specialty Surgical Instrumentation, Inc. v. Phillips, 844 F. Supp. 1211, 1217 (M.D. Tenn. 1994). As the Sixth Circuit Court of Appeals has held:

> To acquire a secondary meaning in the minds of the buying public, an article of merchandise when shown to a prospective customer must prompt the affirmation, "That is the article I want because I know its source," and not the negative inquiry as to "Who makes that article?" In other words, the article must proclaim its identification with its source, and not simply stimulate inquiry about it.

---

[6] Clever Factory has not alleged or shown that its trade dress has an inherent distinctiveness.

Ferrari S.P.A. v. Roberts, 944 F.2d 1235, 1239 (6th Cir. 1991) (quoting West Point Mfg. Co. v. Detroit Stamping Co., 222 F.2d 581, 595 (6th Cir.), cert. denied, 350 U.S. 840, 76 S.Ct. 80, 100 L.Ed. 749 (1955)).

A seven-factor test is used to determine whether there is a secondary meaning in a trade dress: (1) direct consumer testimony, (2) consumer surveys, (3) exclusivity, length, and manner of use, (4) amount and manner of advertising, (5) amount of sales and number of customers, (6) established place in the market, and (7) proof of intentional copying. Herman Miller v. Palazzetti Imports and Exports, 270 F.3d 298, 311-12 (6th Cir.2001); Marketing Displays, Inc. v. TrafFix Devices, Inc., 200 F.3d 929, 937 (6th Cir. 1999), rev'd on other grounds, TrafFix Devices, Inc. v. Marketing Displays, Inc., 532 U.S. 23, 121 S.Ct. 1255, 149 L.Ed.2d 164 (2001). The Defendants argue that Clever Factory has not presented direct consumer testimony or consumer surveys in support of a showing of a secondary meaning, that Clever Factory's evidence of advertising and sales is vague, conclusory, or irrelevant, and that Clever Factory's evidence of the alleged copying of its trade dress is not buttressed by evidence of the intent behind the alleged copying.

Clever Factory has not presented any supporting evidence of direct consumer testimony, of consumer surveys, of its established place in the market, or of the intent of Kingsbridge behind the alleged copying. Nor has it presented any argument on the third relevant factor. While the presence of evidence as to these several factors is not required, the lack of such evidence does not help the Plaintiff show that a secondary meaning in the trade dress exists in the minds of the consuming public. Clever Factory has provided some evidence as to the fourth and fifth factors of the analysis, the amount and manner of advertising and the amount of sales of the Flash Game Cards, see Affidavit of Andy Hyde (Docket Entry No. 150), at ¶¶ 2-4, and has pointed to evidence put into the

record by the Defendants on the amount and manner of advertising and amount of sales. See Affidavit of Edward R. Schwartz (Docket Entry No. 146), at ¶7 and Exhibit G. However, even when viewed in the light most favorable to Clever Factory as the non-moving party, this evidence simply falls short of providing an evidentiary basis that could reasonably be viewed as establishing a secondary meaning in the trade dress at issue. The proof the Plaintiff has provided only minimal proof of advertising. Further, without some type of other information about customer identification with the trade dress, the evidence of advertising and total sales amounts provides little probative value to establish a secondary meaning. As the Sixth Circuit has noted, "advertising and sales volume, while relevant, are not sufficient, without more, to establish secondary meaning." Burke-Parsons-Bowlby Corp. v. Appalachian Log Homes, Inc., 871 F.2d 590, 596 (6th Cir. 1989).

The evidentiary burden necessary to establish a secondary meaning is substantial. See DeGidio v. West Grp. Corp., 355 F.3d 506, 513 (6th Cir. 2004); Burke-Parsons-Bowlby Corp., supra. Although Clever Factory makes the conclusory assertion that its trade dress "is well known to the consuming public and the trade as identifying and distinguishing Plaintiff as the exclusive and unique source of the products that are used in connection with such trade dress," see Docket Entry No. 155, at 17, it has provided scant evidence in support of this assertion. The Court finds that Clever Factory has not presented sufficient evidence raising a genuine issue of material fact on the secondary meaning element. Based on the evidence that has been presented to the Court, no reasonable jury could find that a secondary meaning exists in the alleged trade dress that serves the primary purpose of identifying Clever Factory as the source of the Flash Game Cards rather than

identifying the Flash Game Cards themselves. Accordingly, summary judgment shall be granted to the Defendants on Count II.[7]

### 3. Common Law Trade Dress Infringement Claim (Count III)

The Defendants argue that Clever Factory's common law trade dress infringement claim warrants dismissal because: 1) it is not clear that a trade dress infringement claim exists under the federal common law; and 2) to the extent that such a claim exists, it essentially mirrors the Lanham Act claim brought by Clever Factory. See Docket Entry No. 142, at 18-19. In response, Clever Factory contends Count III is brought under state common law. Specifically, Clever Factory argues that since "a claim arises under the law that creates the cause of action," and "since there is no federal common law governing trademark infringement, Count III of the Amended Complaint must be asserting a state law claim." See Docket Entry No. 155, at 22. Accordingly, Clever Factory asserts that the Defendant's arguments for dismissal of this claim lack merit.

The Court is not persuaded by the response of Clever Factory. In its pleadings, Clever Factory alleged in Count III that the Defendants engaged in acts of trade dress infringement "in violation of the common law." See Docket Entry No. 82, at 12. The Court, in ruling upon Kingsbridge's prior motion for summary judgment, noted that there was a lack of agreement between the parties about the legal foundation for Counts III and IV, analyzed the relevant filings on the

---

[7] In their reply to Clever Factory's response to their motion for partial summary judgment, the Defendants raise the argument that Clever Factory has not identified the particular elements and attributes that comprise their trade dress. See Docket Entry No. 157, at 4. Because this argument was not raised in the underlying motion, the Court has not considered it as a basis for summary judgment and renders no opinion on the merits of such an argument.

matter, and went on to find that Count III was a claim asserted under federal, not state, common law. See Memorandum entered September 24, 2013 (Docket Entry No. 129, at 15-16).

The Court's prior interpretation of Count III is correct and is the law of this case. Although Clever Factory's pleadings show that it was able to clearly specify the claims brought under Tennessee common and statutory law, see Counts V-VII, it did not specify Count III as a Tennessee common law claim. Further, Clever Factory failed to take any action subsequent to the Court's September 24, 2013, Memorandum to move to amend its pleadings to specifically plead that Count III was brought under Tennessee common law or to otherwise clarify the basis for this claim. Clever Factory has not set forth a basis for a federal common law claim, see International Order of Job's Daughter v. Lindeburg & Co., 633 F.2d 912, 915 (9th Cir. 1980), and concedes that a federal common law claim for trade dress infringement does not exist. See Docket Entry No. 155, at 22, Accordingly, summary judgment shall be granted to the Defendants on Count III.

## 4. Common Law Unfair Competition Claim (Count IV)

In Count IV, Clever Factory alleges that the Defendants engaged in acts of unfair competition "in violation of the common law." See Docket Entry No. 82, at 12-13. Both parties view this claim as a claim brought under federal common law. See Docket Entry No. 142, at 19; Docket Entry No. 155, at 23. However, the Defendants contend that no such federal common law claim exists. Alternatively, they argue that Clever Factory cannot support such a claim. Clever Factory responds with its own analysis of the claim, contending that genuine issues of material fact exist as to the claim.

The Court finds that the claim warrants dismissal because there is no federal common law claim of unfair competition. See Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 670 (Fed. Cir. 1988). But see Tennessee Walking HorseBreeders and Exhibitors Assoc. v. National Walking Horse Assoc., 528 F.Supp.2d 772 (M.D. Tenn. 2007) (recognizing without discussion a claim for federal common law unfair competition). The lack of federal common law for an unfair competition claim is further apparent given the analysis offered by the parties. Each case cited by the parties in their analysis is a case based upon Tennessee common law, not upon federal common law. Summary judgment shall be granted to the Defendants on Count IV.

5. Anti-dilution Claim under Tenn. Code. Ann. § 47-25-512 (Count VI)

Count VI of the Plaintiff's complaint is alleged as follows:

Defendants' use of the Plaintiff's trade dress in the Game Cards is likely to dilute the quality and/or strength of Plaintiff's trade dress in the Game Cards in violation of the anti-dilution laws of the state of Tennessee, Tenn. Code Ann. § 47-25-512.

See Amended Complaint (Docket Entry No. 82, at 14, ¶ 64. Although Clever Factory refers to Section 47-25-512, the parties both argue this claim as a violation of Section 47-25-513, which covers trademark dilution. See Docket Entry No. 142, at 20, and Docket Entry No. 155, at 26.

The Tennessee Trade Mark Act of 2000 provides as follows:

(a) The owner of a mark which is famous in this state shall be entitled, subject to the principles of equity and upon such terms as the court deems reasonable, to an injunction against another person's commercial use of a mark or trade name, if such use begins after the mark has become famous and causes dilution of the distinctive quality of the mark, and to obtain such other relief as is provided in this section. In determining whether a mark is distinctive and famous, a court may consider factors including, but not limited to:

(1) The degree of inherent or acquired distinctiveness of the mark in this state;

(2) The duration and extent of use of the mark in connection with the goods and services with which the mark is used;

(3) The duration and extent of advertising and publicity of the mark in this state;

(4) The geographical extent of the trading area in which the mark is used;

(5) The channels of trade for the goods or services with which the mark is used;

(6) The degree of recognition of the mark in the trading areas and channels of trade in this state used by the mark's owner and the person against whom the injunction is sought;

(7) The nature and extent of use of the same or similar mark by third parties; and

(8) Whether the mark is the subject of a state registration in this state, or a federal registration under the Act of March 3, 1881, or under the Act of February 20, 1905, or on the principal register.

(b) In an action brought under this section, the owner of a famous mark shall be entitled only to injunctive relief in this state, unless the person against whom the injunctive relief is sought willfully intended to trade on the owner's reputation or to cause dilution of the famous mark. If such willful intent is proven, the owner shall also be entitled to the remedies set forth in this chapter, subject to the discretion of the court and the principles of equity.

(c) The following shall not be actionable under this section:

(1) Fair use of a famous mark by another person in comparative commercial advertising or promotion to identify the competing goods or services of the owner of the famous mark;

(2) Noncommercial use of the mark; or

(3) All forms of news reporting and news commentary.

Tenn. Code Ann. § 47-25-513.

There is a dearth of case law specifically directed at the Tennessee anti-dilution law. However, because the language of the Tennessee law tracks that of the Federal Trademark Dilution Act of 1995 ("FTDA"), 15 U.S.C. § 1125(c), "the construction given the federal act should be examined as persuasive authority for interpreting and construing [Tennessee anti-dilution law]." Kellogg Co. v. Exxon Mobil Corp., 192 F. Supp. 2d 790, 808 n.10 (W.D. Tenn. 2001). See also AutoZone, Inc. v. Tandy Corp., 373 F.3d 786, 802 (6th Cir. 2004); Tenn. Code. Ann. § 47-25-218.

Dilution is defined as "the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of (1) competition between the owner of the famous mark and other parties; or (2) likelihood of confusion, mistake, or deception." 15 U.S.C. § 1127. As the Sixth Circuit explained in Kellogg Co. v. Toucan Golf, Inc., 337 F.3d 616, 628 (6th Cir. 2003):

> Dilution law, unlike traditional trademark infringement law, does not exist to protect the public. It is not based on a likelihood of confusion standard, but only exists to protect the quasi-property rights a holder has in maintaining the integrity and distinctiveness of his mark. See Moseley v. v. (sic) Secret Catalogue, Inc., 537 U.S. 418, 123 S.Ct. 1115, 1122, 155 L.Ed.2d 1 (2003); see also FTDA § 4, 15 U.S.C. § 1127.

337 F.3d at 628. The Sixth Circuit held that, in order to establish a prima facie case of trademark dilution, the senior mark must be: (1) famous; and (2) distinctive, and the junior mark must: (3) be in commerce; (4) have begun subsequent to the senior mark becoming famous; and (5) cause dilution of the distinctive quality of the senior mark. Id.

In contrast to an infringement claim under the Lanham Act, the FTDA was meant to afford expansive trademark protections to a "far narrower" class of entities than those subject to traditional

trademark protections. See TCPIP Holding Co., Inc. v. Haar Commc'ns, 244 F.3d 88, 94 (2d Cir. 2001); Moore v. Weinstein Co., LLC, 2012 WL 1884758, *41 (M.D. Tenn. May 23, 2012). Accordingly, "[t]he standard for fame and distinctiveness required to obtain anti-dilution protection is more rigorous than that required to seek infringement protection." Libbey Glass, Inc. v. Oneida Ltd., 61 F. Supp. 2d 700, 717 (N.D. Ohio 1999) (quoting I.P. Lund Trading ApS v. Kohler Co., 163 F.3d 27, 47 (1st Cir. 1998)).

A required element for any anti-dilution claim is that the mark sought to be protected be distinctive. See TCPIP Holding Co., Inc., 244 F.3d at 93; I.P. Lund Trading ApS, 163 F.3d at 47. Indeed, a showing of distinctiveness is usually necessary for the mark sought to be protected to be a famous mark, which is likewise required for an anti-dilution claim. Id.; Avery Dennison Corp. v. Sumpton, 189 F.3d 868, 875 (9th Cir. 1999). Clever Factory has not set forth an argument that its trade dress is inherently distinctive. Further, in analyzing Clever Factory's Lanham Act trade dress infringement claim, the Court considered several factors and found that there is not sufficient evidence upon which to deem Clever Factory's trade dress distinctive because it had acquired a secondary meaning. This finding applies equally to the anti-dilution claim and renders Clever Factory unable to satisfy either the distinctiveness element or the famous element of its anti-dilution claim. See Jimdi, Inc. v. Twin Bay Docks & Products, Inc., 501 F. Supp. 2d 993, 1009 (W.D. Mich. 2007). Clever Factory has not shown that evidence exists upon which a reasonably jury could find that its trade dress was both distinctive and famous in light of any of the factors set out in Section

47-25-513(a). Accordingly, given the lack of a genuine issue of material fact on this claim, summary judgment shall be granted to the Defendants on Clever Factory's anti-dilution claim.[8]

6. TCPA Claim (Count VII)

In Count VII of the amended complaint, the Plaintiff alleges as follows:

Defendants' use of Plaintiff's trade dress in the Game Cards is an unfair and deceptive trade practice prohibited by the Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-104, including but not limited to the following:

a. Defendants' use of Plaintiff's trade dress in the Game Cards is likely to lead to substantial consumer confusion or misunderstanding as to the source, sponsorship, approval or certification of goods offered by Defendants in violation of Tenn. Code Ann. § 47-18-104(b)(2);

b. Defendants' use of Plaintiff's trade dress in the Game Cards is a false passing off of goods as those of another in violation of Tenn. Code Ann. § 47-18-104(b)(1);

c. Defendants' use of Plaintiff's trade dress in the Game Cards is an advertisement of goods with no intent to sell them as advertised in violation of Tenn. Code. Ann. § 47-18-104(b)(9); and

d. Defendants' use of Plaintiff's trade dress in the Game Cards is an act or practice that is deceptive to the consumer and others in violation of Tenn. Code. Ann. § 47-18-104(b).

See Amended Complaint (Docket Entry No. 82), at 14, ¶ 66.[9]

_____

[8] The Court notes that another Judge in this District has found that a plaintiff does not have standing to bring a claim under the Tennessee Trade Mark Act for unregistered trademarks and trade dress. See Kano Labs., Inc. v. Clenair Mfg., Inc., 2013 WL 1775446, *2 (M.D. Tenn. Apr. 25, 2013) (Campbell, J.).

[9] Tenn. Code Ann. § 47–18–104(b) lists 32 separate unfair or deceptive acts or policies that all involve some form of misrepresentation about goods or services. In its Memorandum in Opposition, Clever Factory appears to indicate the Count VII is based in part on alleged violations of Tenn. Code. Ann. §§ 47-18-104(b)(3) and (5). See Docket Entry No. 155, at 28. However, Clever Factory did not plead these two subsections of Section 47-18-104(b) as part of the TCPA

The Defendants argue that subsets a, b, and d of Count VII are essentially restatements of Clever Factory's Lanham Act claims and federal common law claims (Counts II, III, and IV) and the same reasons for dismissal of these Counts applies to these three alleged TCPA violations. As to subset c, the Defendants assert that Clever Factory has not provided any evidence supporting this alleged TCPA violation. <u>See</u> Docket Entry No. 142, at 21-22.

The Court is not persuaded by the Defendants' arguments. First, the Court's reasons for dismissal of Counts III and IV of this lawsuit as set out <u>supra</u> were unrelated to any substantive analysis of the claims. Thus, the dismissal of Counts III and IV has no impact upon the validity of Clever Factory's TCPA claims.

Second, to the extent that the analysis for a Lanham Act trade dress infringement claim applies to any of Clever Factory's TCPA claims, the decision in <u>Moore v. Weinstein Co., LLC</u>, 545 F. App'x 405, 411 (6th Cir. 2013), specifically references only a claim brought under Section 47-18-104(b)(2). Furthermore, the application of Lanham Act analysis to a TCPA claim, even if it is a claim brought under any subsection of section 47-18-104(b), appears to refer only to the likelihood of confusion element of a Lanham Act claim. <u>Id.</u>; <u>See also</u> <u>Gen. Conf. Corp. of Seventh–Day Adventists v. McGill</u>, 624 F.Supp.2d 883, 891 (W.D.Tenn. 2008); <u>McDonald's Corp. v. Shop at Home, Inc.</u>, 82 F.Supp.2d 801, 816 (M.D.Tenn. 2000); <u>Kebab Gyros, Inc. v. Riyad</u>, 2011 WL 1522343, *7 (M.D. Tenn. Apr. 19, 2011). However, the Defendants did not rest their argument for dismissal of the Lanham Act claim upon the Plaintiff's failure to satisfy the likelihood of confusion element and they set forth no argument as to this element. Therefore, there is no impact on the

---

cause of action and they are not part of Count VII.

validity of the Plaintiff's TCPA claims because of the Court's dismissal of the Lanham Act claim set out in Count II. The Defendants have provided no other arguments for the grant of summary judgment in their favor on these three alleged TCPA violations. Accordingly, summary judgment is denied as to these three alleged TCPA violations.

As to the alleged violation of Section 47-18-104(b)(9), the Court finds that genuine issues of material fact exist on whether the Defendants' alleged use of Clever Factory's trade dress in the Flash Card Games was an advertisement of goods with no intent to sell them as advertised. Accordingly, summary judgment is not warranted on this claim.

## CONCLUSION

For the reasons stated herein, the motion for partial summary judgment filed by Defendants Kingsbridge International, Inc. and Rite Aid Corporation (Docket Entry No. 140) is granted in part and denied in part, and the Plaintiff's motion for reconsideration (Docket Entry No. 148) is denied. Summary judgment shall be granted to the Defendants on Counts II, III, IV, and VI.

An appropriate Order will enter.

JULIET GRIFFIN
United States Magistrate Judge